YELVERTON, Judge.
Jeffery Leonard Campbell confirmed a judgment of default for $97,770.15 against Century Oilfield Services, Inc., and $2,229.85 against Century Pipe Services, Inc., a total of $100,000. Campbell claimed this sum was due him for services rendered during the two and one-half months he worked under a written contract of employment between him and Century Oilfield Services, Inc. The defendants appealed, urging that the evidence on confirmation of default was insufficient to make out a pri-ma facie case against them for the amounts claimed. The defendants ask that we set aside the default judgment against them and remand the case to the trial court' for further proceedings.
For reasons which follow, we set aside the judgment and remand.
FACTS
Campbell and Century Oilfield Services, Inc., entered into a written contract dated April 16, 1990, hiring Campbell to provide certain consulting services to Century and its affiliated companies. The contract contained four agreements: (1) Campbell would provide consulting services in the area of contract labor commencing immediately; (2) the compensation was at the rate of $3,000 per month minimum for the first 60 days or 35% of the jobs generated by Campbell’s activities less cost of said jobs, whichever was greater; (3) additionally, Campbell was entitled to reimbursement for normal business travel and entertainment expenses; and (4) should the contract be terminated for any reason, Campbell or his heirs would be entitled to compensation at 35% of the jobs generated less cost of said jobs for as long as the jobs remained active and in effect.
Campbell filed suit on October 12, 1990, which was about six months after inception of the contract. He sued Century Oilfield Services, Inc., and Century Pipe Services, *66 Inc., for services performed pursuant to the contract. In addition, he alleged that he incurred expenses of $2,151. He prayed for judgment in the amount of $100,000.
The petition alleged that Campbell had obtained jobs for both Century Oilfield Services, Inc., and its affiliated company, Century Pipe Services, Inc. The petition alleged that the contract labor jobs generated by Campbell’s efforts were with five customers: Tuboscope, Inc., Cliffs Drilling Co., TransWorld Drilling Co., Chevron USA, Inc., and Conoco, Inc.
Five requests for admissions were served with the petition on Century Oilfield Services, Inc. The requests sought admissions to establish that there was a contract; that the agent who signed on behalf of Century ■Oilfield Services, Inc., had authority to do so; that Century Pipe Services, Inc., was an affiliated company of Century Oilfield Services, Inc.; and that both defendants received consulting services in the area of contract labor from Campbell.
Proper service of these pleadings was made on both defendants. Neither answered. In due course a preliminary default was taken against each defendant. On February 20, 1991, the preliminary default was confirmed and a judgment was read, rendered, and signed in open court that same day awarding Campbell $97,-770.15 against Century Oilfield Services, Inc., and $2,229.85 against Century Pipe Services, Inc., both amounts bearing judicial interest from date of judgment, and costs.
THE EVIDENCE
The evidence was in two forms, testimonial and documentary. Campbell’s testimony was brief. He identified the contract. He testified that he was compensated at the rate of $3,000 per month for the first 60 days. He then identified a list of expense items totalling $2,151.01 and the exhibits supporting these items, which were placed in evidence. One of these items was an intriguing but unexplained memorandum for $450 representing “salary due through 6-29-90”. Another expense item was for a car allowance at $300 per month for two months and three weeks, totalling $825. Except for a few dollars, all of these itemized expenses were incurred by the end of June 1990.
After reciting that he had been compensated at the rate of $3,000 per month for the first 60 days and that he had incurred expenses of $2,151.01, Campbell started to put on his documentary evidence to support his demand for his consulting services. The trial judge at this point asked Campbell from “when until when” did he provide these services. His answer was from April 16 until roughly the end of June 1990. Counsel for plaintiff then addressed the court explaining that the contract provided, in counsel’s words, that the “payments regardless of whether he was discharged from the company, which he was, would continue on past the date of his discharge.” From all of this we gather that Campbell worked under the contract from April 16 until he was discharged around the end of June.
Campbell proceeded then to identify the exhibits which he offered to prove his services. It was here that the name of Service Contractors of Lafayette, Inc., made its first appearance in the case. Campbell testified that Service Contractors was an affiliated company of Century Oilfield Services, Inc., and that it was acquired by Century Oilfield Services on May 29, 1990. Campbell testified that he generated jobs for Century Oilfield Services, Inc., Century Tool Services, Inc., and Service Contractors of Lafayette, Inc. Campbell then identified his documentary evidence.
The documentary evidence consisted of 1115 pages of records produced by Tubo-scope, Cliff’s Drilling, TransWorld Drilling, Chevron, and Conoco, in response to sub-poenae duces tecum issued before trial. Each of the five subpoenae read the same, requiring:
ALL RECORDS, DOCUMENTS, ACCOUNTS RECEIVABLE AND JOB TICKETS APPLICABLE TO CENTURY OILFIELD SERVICES, INC. OR CENTURY PIPE SERVICES, INC. REFLECTING DOLLAR AMOUNTS PAID TO OR BILLED BY SAID COMPANIES *67 TO YOUR COMPANY FROM APRIL 16, 1990 THROUGH FEBRUARY 8, 1991.
The subpoenaed documents were introduced in evidence to corroborate Campbell’s brief testimony. These documents made up the bulk of the plaintiff’s proof. Although the subpoenae limited the records from April 16, 1990, through February 8, 1991 (the first scheduled date for confirmation of default), the response from Chevron was not so limited; Chevron produced hundreds of documents going back to 1989, months before the inception date of Campbell’s contract with Century. Nevertheless, these documents joined the others in the bundle introduced in evidence by Campbell with the explanation that he produced the jobs after his contract began.
The subpoenae also asked only for documents applicable to Century Oilfield Services, Inc., or Century Pipe Services, Inc. Chevron’s response included hundreds of documents applicable to Service Contractors of Lafayette, Inc. These were also introduced in evidence by Campbell as jobs produced under his contract.
The following is a breakdown of the jobs as reflected by the returns under the sub-poenae:

Tuboscope

Proof of these jobs was offered by copies of seven checks issued by Tuboscope in the last half of 1990, totalling $2,428, made payable to MetroFactors, Inc., (an accounts receivable assignee) and Century Oilfield Services, Inc.

Cliffs Drilling Co.

There were two invoices totalling $1,814.55, dated July 1990.

TransWorld Drilling Co.

This offering consisted of 14 invoices and job tickets totalling $12,742.

Conoco

Campbell testified that he generated $29,895 of work from Conoco distributed out over five jobs in mid-1990. Every one of these jobs was done for Service Contractors of Lafayette, Inc.

Chevron, U.S.A., Inc.

Ninety-four percent of Campbell’s total demands was based on Chevron business. These documents are contained in plaintiff’s Exhibits # 6 & 9 and a recapitulation appears in plaintiff’s Exhibit # 13. He claimed the benefit of work billed to Chevron totalling $738,033.49, represented by 210 invoices.
Based on all of the above documentary evidence, Campbell’s calculation of what was due him went substantially like this: all of the invoices in the record, added up, show that, during the approximate two and one-half months he worked for the defendant, he generated $784,913.04 in business. Of this amount, $772,000 was generated for Service Contractors of Lafayette, Inc., and Century Oilfield Services, Inc. The balance, or $12,742, was done for Century Pipe Services, Inc. Plaintiff explained that his commission under the contract was 35% of the total generated work reduced 50% for cost. The figure of 50% as the percentage to reduce for cost was arrived at because this was the plaintiff’s opinion of the percentage of cost “normally to be found in the labor area”.
From these calculations, he believed that his work for Service Contractors of Lafayette and Century Oilfield Services entitled him to an award of $135,129.93. Because this amount turned out to be more than the $100,000 that he had sued for, he testified that he would accept a judgment within the $100,000 that he sued for. His calculation of the amount owed him for work produced for Century Pipe Services, Inc., again based on the formula of 35% of 50% of the total gross amount of work produced, was $2,229.85. The court accepted those figures and rendered a judgment from the bench in his favor against Century Oilfield Services, Inc., in the amount of $97,770.15, and against Century Pipe Services, Inc., for $2,229.85.
OPINION
We have made a careful study of the record in this case. The mathematical analysis of the evidence which the reader will find in our opinion does not appear in *68 the briefs; it is the result of this court’s own detailed study.
The evidence does not establish a prima facie case to support this judgment. There are a number of substantial problems in the proof.
One is that much of the plaintiff’s documentary evidence was not relevant. For example, of the 77 invoices that can be found in Volume 1 of his Exhibit # 9, aggregating $227,410.05 of work produced, only one was for work produced after the contract began. The other 76 were invoiced out in 1989 and the early part of 1990 well before April 16, 1990, which was the commencement date of his contract with Century Oilfield Services, Inc. The same is true of the 24 invoices totalling $140,082.39 which are found in Volume 2 of Exhibit # 9. Thus, about one-half of his evidence predated his employment. Since the very basis for his demand was the claim in his petition that he earned commissions under a written contract of employment from and after April 16, 1990, what happened before that date was not relevant.
Another error was the admission of evidence pertaining to business produced on behalf of Service Contractors of Lafayette, Inc. The total amount of these invoices was $615,119.44, which was 78% of the total that the plaintiff claimed. The record shows that Century Oilfield Services, Inc., acquired Service Contractors of Lafayette, on May 29, 1990. The evidence shows that from that date on, Service Contractors was an “affiliated company”. However, Service Contractors was not sued by the plaintiff, nor was its name mentioned in the petition or requests for admissions. The plaintiff did not allege or demand in his petition any commissions based on work produced for Service Contractors. The two defendants named in the petition were Century Oilfield Services, Inc., and one of its affiliated companies, Century Pipe Services, Inc. The only affiliated company for whose jobs plaintiff sought recovery in the petition was Century Pipe Services, Inc.
The admission of evidence of jobs placed for Service Contractors, and the judgment based thereon, was in violation of La.C.C.P. art. 1703. This article provides that a judgment by default shall not be different in kind from that demanded in the petition. Taylor v. Dowden, 563 So.2d 1294 (La.App. 3rd Cir.1990), writ denied, 568 So.2d 1057 (La.1990); Perrodin v. Southern Siding Co., Inc., 524 So.2d 885 (La.App. 3rd Cir.1988); St. Tammany Homesites, Inc. v. Parish of St. Tammany, 491 So.2d 450 (La.App. 1st Cir.1986); Lake v. Lake, 460 So.2d 1130 (La.App. 2d Cir.1984). Century Oilfield Services, Inc., as the contracting party, was never told in the petition or the prayer that it would be held accountable for jobs produced on behalf of Service Contractors. Campbells’ petition expressly limited his demands to jobs produced for only one affiliated company, Century Pipe Services. He even named that affiliate as a defendant. He limited his requests for admissions to jobs produced for Century Oilfield and Century Pipe. Therefore, his efforts to prove jobs for Service Contractors exceeded the scope of the petition and prayer in violation of La.C.C.P. art. 1703.
There was still another error overlooked by counsel and the trial court. Our examination of the record revealed that there were at least 38 invoices, totalling over $60,000, found in plaintiff’s Exhibit # 9, Volumes 3 & 4, which appeared again in plaintiff’s Exhibit # 6, and were therefore counted twice. .
For the above reasons, as well as for additional reasons which we find it unnecessary to recite here, the judgment of the trial court is reversed and set aside and the matter is remanded to the trial court for further proceedings. The plaintiff, Campbell, will pay the costs of the confirmation of default in the trial court, and the costs of this appeal.
REVERSED AND REMANDED.